IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| THEODORE JORRELL SMITH, #02166689 | § | |
| VS. | § | CIVIL ACTION NO. 6:22cv442 |
| DWANN G. DUNBAR, ET AL. | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff Theodore Jorrell Smith, a prisoner confined in the Texas prison system, proceeding *pro se* and *in forma pauperis*, filed this civil rights lawsuit pursuant to 42 U.S.C. § 1983. Plaintiff's cause of action was referred to the undersigned United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case pursuant to 28 U.S.C. § 636.

Plaintiff filed his original complaint on November 18, 2022 (Dkt. #1). He sued Coffield Unit Sergeant Dwann Dunbar, Correctional Officer Amy L. Matthews, and Nurse Jane Doe, now known as Nurse Mollie Emerson. On January 20, 2023, the Court ordered Plaintiff to file a More Definite Statement to the Court's Questionnaire. (Dkt. #7). Plaintiff filed his More Definite Statement on January 30, 2023. (Dkt. #8).

Before the Court is Defendants Dunbar, Matthews, and Emerson's Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6). (Dkt. #11). Plaintiff did not file a response in opposition. For the reasons hereinafter explained, the Court recommends that Defendants' motion to dismiss be granted in part and denied in part.

1

Plaintiff's allegations

Plaintiff alleges that while housed at the Coffield Unit, he and his cellmate initially were engaged in horseplay that became a serious fight on May 13, 2021. (Dkt. #1 at 4). His cellmate used a heavy, metal lock in a sock to strike him several times. From the altercation, Plaintiff suffered a broken right hand, a broken pinkie finger on his left hand, an injury to his left eye, and pain in his left knee area. Defendant Matthews did not stop the fight or call for backup until the fight was over. After the fight, Defenant Matthews called for Defendant Dunbar. Sgt. Dunbar placed Plaintiff in handcuffs and escorted him to the medical department. Nurse Jane Doe, now known as Nurse Mollie Emerson, examined Plaintiff's injuries, told him his hand was broken, and that he would need an x-ray. He was given 1 packet of 800 milligram ibuprofen, 3 packets of non-aspirin pain reliever (Dkt. #8 at 2), and 3 large band aides for his hand. After his examination, he was placed in handcuffs and escorted to medium custody where he remained for the next twenty-two days, in pain, until he received surgery to repair his hand. Plaintiff seeks compensatory damages for his injuries, and pain and suffering. (Dkt. #1, p. 10).

Discussion

I.  **Defendants' motion to dismiss pursuant to Rule 12(b)(1)**

Defendants Dunbar, Matthews, and Emerson allege that Plaintiff does not specify in his complaint whether he is suing Defendants in their official capacities for money damages. To the extent Plaintiff is suing Defendants in their official capacities, Defendants move to dismiss Plaintiff's official capacity claims for money damages for lack of subject matter jurisdiction. "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits."

*Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). The Court addresses the Rule 12(b)(1) motion first.

    A.    <u>Fed. R. Civ. P. 12(b)(1) standard</u>

The Federal Rules of Civil Procedure require this Court to dismiss a cause for lack of subject matter jurisdiction "when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Mississippi, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "Sovereign immunity is jurisdictional in nature." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). Claims barred by the invocation of sovereign immunity "can be dismissed only under Rule 12(b)(1) and not with prejudice." *Warnock v. Pecos Cnty., Tex.*, 88 F.3d 341, 343 (5th Cir. 1996).

When the defendant alleges a facial attack under Rule 12(b)(1), "the trial court is required merely to look to the sufficiency of the allegations in the complaint because they are presumed to be true." *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). This Court, therefore, examines whether the allegations in the pleadings alone, which are assumed to be true, are sufficient to invoke the Court's subject matter jurisdiction. *Williamson v. Tucker*, 645 F.2d 404, 412–14 (5th Cir. 1981).

    B.    <u>Claim for money damages against Defendants in their official capacities</u>

Plaintiff is suing Sgt. Dunbar, Correctional Officer Matthews, and Nurse Emerson for money damages (Dkt. #1); however, he does not distinguish whether he is suing them in their official or individual capacities. Defendants assert that any claim for money damages against them in their official capacities is barred by the Eleventh Amendment. To the extent Plaintiff is seeking money damages from the Defendants in their official capacities, that claim should be dismissed without prejudice.

When a plaintiff files suit against state officials in their official capacities, in effect, he is bringing suit directly against the state. *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *see also McKinley v. Abbott*, 643 F.3d 403, 406 (5th Cir. 2011), *cert. denied*, 565 U.S. 1079 (2011) ("Eleventh Amendment immunity extends to state officials who are sued in their official capacities because such a suit is actually one against the state itself")). Since the State has not consented to suit, in as far as Plaintiff filed suit against Defendants for monetary relief in their official capacities, Defendants are shielded from this claim via the Eleventh Amendment. *See Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (citing *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 54 (1996)). The Court recommends any claim seeking money damages from Defendants in their official capacities be dismissed, without prejudice, for lack of subject matter jurisdiction.

**II.     Defendants' motion to dismiss pursuant to Rule 12(b)(6)**

Defendants Dunbar, Matthews, and Emerson move to dismiss Plaintiff's claims against them in their individual capacities under Rule 12(b)(6) for failure to state a claim upon which relief may be granted. Defendants assert that Plaintiff has failed to allege facts demonstrating a violation of Plaintiff's constitutional rights.

    A.    <u>Fed. R. Civ. P. 12(b)(6) Standard</u>

When a defendant files a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the trial court must assess whether a complaint states a plausible claim for relief. *See Raj v. Louisiana State Univ.*, 714 F.3d 322, 329–330 (5th Cir. 2013) (citing *Bass v. Stryker Corp.*, 669 F.3d 501, 506 (5th Cir. 2012)). Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6).

The Supreme Court clarified the standards that apply in a motion to dismiss for failure to state a claim in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* at 555. The Court does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. A complaint may be dismissed if a plaintiff fails to "nudge [his] claims across the line from conceivable to plausible." *Id.* The distinction between merely being possible and plausible was reiterated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Federal Rule of Civil Procedure 8(a) does not require "detailed factual allegations but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 677–78. A pleading offering "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not suffice, nor does a complaint which provides only naked assertions that are devoid of further factual enhancement. Courts need not accept legal conclusions as true, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, are not sufficient. *Id*. at 678.

A plaintiff meets this standard when he "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. A complaint may be dismissed if a plaintiff fails to "nudge [his] claims across the line from conceivable to plausible," or if the complaint pleads facts merely consistent with or creating a suspicion of the defendant's liability. *Id*.; *see also Rios v. City of Del Rio, Tex*., 444 F.3d 417, 421 (5th Cir. 2006).

Given that Defendants are moving for dismissal pursuant to Rule 12(b)(6), the Court construes the complaint (Dkt. #1) and More Definite Statement (Dkt. #8) in favor of Plaintiff and accepts as true all well-pleaded facts. *See Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (citing *Gonzales v. Kay,* 577 F.3d 600, 603 (5th Cir. 2009)). *Pro se* plaintiffs are held to a more lenient standard than are lawyers when analyzing a complaint, but *pro se* plaintiffs must still plead factual allegations which raise the right to relief above the speculative level. *Chhim v. Univ. of Texas at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

If the facts alleged in a complaint do not permit the court to infer more than the mere possibility of misconduct, a plaintiff has not shown entitlement to relief. *Id*. (citing Fed. R. Civ. P. 8(a)(2)). Dismissal is proper if a complaint lacks a factual allegation regarding any required element necessary to obtain relief. *Rios*, 444 F.3d at 421. By contrast, while a motion to dismiss challenges a complaint's legal sufficiency, a post-discovery motion for summary judgment evaluates whether a genuine issue of material fact remains after considering both sides' proffered evidence. *Rader v. Cowart*, 543 F. App'x 358 (5th Cir. 2013); *see also St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 440 n.8 (5th Cir. 2000).

    B. <u>Plaintiff's claim against Defendant Matthews</u>

In his complaint, Plaintiff states that Defendant Matthews stopped the fight and called for Sgt. Dunbar to come to the housing area. (Dkt. #1 at 4). In his More Definite Statement, Plaintiff asserts that Defendant Matthews saw the altercation between him and his cellmate but did not "intervene or call for backup until the fight was over." (Dkt. #8 at 4).

"It is well established that prison officials have a constitutional duty to protect prisoners from violence at the hands of their fellow inmates." *Farmer v. Brennan,* 511 U.S. 825, 832-33 (1994); *Longoria v. Texas*, 473 F.3d 586, 592 (5th Cir. 2006). This duty, which is grounded in the Eighth Amendment's prohibition against cruel and unusual punishments, is nevertheless a limited one. *Farmer,* 511 U.S. at 832–34. The Eighth Amendment mandates "reasonable" safety, not "absolute" safety. *Newton v. Black,* 133 F.3d 301, 308 (5th Cir. 1998); *Lopez v. LeMaster,* 172 F.3d 756, 759 (10th Cir. 1999) ("We recognize at the outset that neither prison officials nor municipalities can absolutely guarantee the safety of their prisoners."). Every injury suffered by one prisoner at the hands of another does not amount to a constitutional violation by prison officials responsible for a prisoner's safety. *Farmer,* 511 U.S. at 834. The substantial risk and need for protection must be obvious to the custodial officials in order to trigger the inmate's Eighth Amendment rights, and prison officials are not required to guarantee that no attack ever will occur. *See Newton,* 133 F.3d at 308.

A prison official is deliberately indifferent to a prisoner's safety where the official is aware of a substantial risk of harm to the prisoner but disregards that risk by failing to take reasonable measures to abate it. *Farmer,* 511 U.S. at 847; *Cantu v. Jones,* 293 F.3d 839, 844 (5th Cir. 2002). To act with deliberate indifference, a prison official must be "subjectively aware" of the risk; that is, he "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837. Even if a prison official was subjectively aware of the risk, he, however, may be found free from liability if he "responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844. Only deliberate indifference will suffice to state a failure to protect claim; mere negligence is not

7

sufficient. *Id.* at 837. The test for establishing deliberate indifference is one of subjective recklessness as used in the criminal law. *Id.* at 837.

Based on the facts alleged, Plaintiff asserts that Defendant Matthews failed to intervene in the fight between Plaintiff and his cellmate, and that she waited until the fight was over to take any action; and thus, she was deliberately indifferent to Plaintiff's safety. The Eighth Amendment imposes the requirement on prison officials to restore control in tumultuous situations, but officials who fail to prevent an injury inflicted by fellow prisoners are liable only where those officials possess the requisite mental state. *Farmer,* 511 U.S. at 832-34. A prison guard has a duty to intervene and attempt to end an assault on an inmate. *Id.*

Though immediate intervention is not required, an official is required to take some steps to halt inmate-on-inmate violence. The case law consistently holds that deliberate indifference does not exist in situations where officers have taken some steps to halt the violence, including: (1) giving verbal orders to stop the violence, *Payne v. Collins*, 986 F.Supp. 1036, 1061 n.59 (E.D. Tex. June 25, 1997), (2) leaving to get help, *see Rios v. Scott*, 100 F. App'x 270 (5th Cir. 2004) (an officer did not immediately intervene in an attack when it commenced but ran to get help), and (3) leaving to obtain tools, such as weapons and teargas, to halt the violence, *see Longoria*, 473 F.3d at 592 (officers did not immediately intervene in an attack but ran to alert other officers of an ongoing attack and to obtain weapons and tear gas).

Plaintiff's complaint and More Definite Statement state that Defendant Matthews took no action to stop the fight until it was over. According to his version of events, Defendant Matthews did not give any verbal orders to stop fighting or to put down the weapon the other inmate was using. *See Verette v. Major, et al.*, Civil Action No. 07-547, 2008 WL 4083032 (W.D. La. Aug.

8

25, 2008) (When an inmate attacked another, officers gave direct verbal orders to the inmate attacker to put down the tool he was using as a weapon, and the inmate obeyed the verbal orders. The Court found the officers were entitled to qualified immunity).

In failure-to-protect cases, "prison guards have no constitutional duty to intervene in the armed assault of one inmate upon another when intervention would place the guards in danger of physical harm." *Longoria*, 473 F.3d at 593-94; *Prosser v. Ross,* 70 F.3d 1005, 1008 (8th Cir. 1995); *see also Winfield v. Bass,* 106 F.3d 525, 532 (4th Cir. 1997) (en banc) ("[S]uch heroic measures are not constitutionally required."). The Constitution does not require unarmed officials to endanger their own safety in order to protect a prisoner threatened with physical violence. *Longoria,* 473 F.3d at 593–94. The Eighth Amendment, however, does demand that the prison official take *some* action to halt the violence. *See Davidson v. Cannon*, 474 U.S. 344, 348 (1986) (comparing negligence to deliberate indifference in a failure to intervene context and implying that standing by and allowing an attack to proceed constitutes deliberate indifference). "Despite its concern with the Fourteenth Amendment's due process clause, *Davidson* constitutes part of Eighth Amendment jurisprudence." *Payne*, 986 F.Supp. at 1061 n.5.

"[C]ompletely failing to take *any* action" to stop an ongoing assault on a prisoner can amount to deliberate indifference. *Winfield,* 106 F.3d at 532; *see also, e.g., Odom v. S.C. Dep't of Corr.,* 349 F.3d 765, 773 (4th Cir. 2003) ("[A] correctional officer who stands by as a passive observer and *takes no action whatsoever* to intervene during an assault violates the [Eighth Amendment] rights of the victim inmate."); *Williams v. Mueller,* 13 F.3d 1214, 1216 (8th Cir. 1994) ("A prison official acts with deliberate indifference to an inmate's safety when the official is present at the time of an assault and fails to intervene or otherwise act to end the assault."); *cf*

*Prosser,* 70 F.3d at 1008–09 (finding no deliberate indifference where prison guard ran to get help immediately after inmate threw first punch at plaintiff). Thus, courts have found that "a corrections officer's failure to intervene in a beating can be the basis of [§ 1983] liability" if the officer had a reasonable opportunity to act and "simply refused to do so." *Smith v. Mensinger,* 293 F.3d 641, 650 (3d Cir. 2002).

If a prison official is present at the time of an assault, he is deliberately indifferent to the inmate's safety, unless there is "evidence justifying the correctional officer's failure to intervene, such as when intervention would threaten the health and safety of all concerned (*i.e.*, the guard is alone and unarmed or another guard has been taken hostage)." *Id., citing Williams*, 13 F.3d at 1215-16, and cases cited therein. With respect to Plaintiff's claims for failure to intervene against Defendant Matthews, Plaintiff has stated a claim upon which relief may be granted.

In the motion to dismiss, Defendant Matthews asserted her entitlement to qualified immunity. Qualified immunity protects government officials performing discretionary functions from "liability for civil damages insofar as their conduct does not violate clearly established rights which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Lytle v. Bexar Cnty., Tex.*, 560 F.3d 404, 409 (5th Cir. 2009). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). "When properly applied, it applies all but the plainly incompetent or those who knowingly violate the law." *Id.* (internal quotations and citations omitted). Defendant Matthews explains the doctrine of qualified immunity in her Motion to Dismiss (Dkt. #11, at pp. 8–9).

To demonstrate the inapplicability of the qualified immunity defense, the plaintiff must satisfy a two-pronged test. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). The first prong is whether "the challenged conduct, viewed in the light most favorable to the plaintiff, would actually amount to a violation of [constitutional or] federal law." *Wernecke v. Garcia*, 591 F.3d 386, 392 (5th Cir. 2009) (internal citation omitted). The second is "whether the defendant's actions violated clearly established statutory or constitutional rights of which a reasonable person would have known." *Flores v. City of Palacios*, 381 F.3d 391, 395 (5th Cir. 2004) (citations omitted). A court may consider the two-pronged inquiry in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Applying this test to the allegations against Defendant Matthews for failure to protect, it is true that horseplay may not be concerning to a correctional officer; however, an inmate beating another inmate with a heavy object in a sock and drawing blood would be cause for immediate concern and attention. At the time of this incident, the law was clear that an officer standing by and doing nothing while one inmate attacks another violates the Constitution. *Some* action is required.

Based on Plaintiff's pleadings, Defendant Matthews' alleged failure to intervene, to call for help, or to leave to obtain weapons and/or assistance constitutes a sufficient allegation of deliberate indifference to a known and obvious excessive risk to Plaintiff's safety. *See Farmer*, 511 U.S. at 847. Plaintiff's allegations, if taken as true, demonstrate that Defendant Matthews violated a clearly established constitutional right of which a reasonable correctional official would have known—Plaintiff's constitutional right to be protected from inmate violence.

Deliberate indifference is difficult to prove, but Defendant Matthews has chosen to rely on a 12(b)(6) Motion and has not presented any evidence yet to rebut the allegations. Plaintiff's

allegations, viewed in the light most favorable to Plaintiff, state a claim of deliberate indifference. Because the pleadings on their face show an unreasonable violation of a clearly established constitutional right, the qualified immunity defense fails at this stage of the proceedings. Defendant Matthews is not entitled to dismissal at this time. Accordingly, Plaintiff's claim for failure to intervene against Defendant Matthews should remain on the docket.

C. Plaintiff's claims against Defendants Dunbar and Emerson

Plaintiff asserts that Defendants Dunbar and Emerson "document[ed] injuries without proper care." (Dkt. #1 at 3). He does not provide any facts explaining his statement regarding documenting injuries with proper care.

More specifically, Plaintiff alleges Defenant Dunbar handcuffed Plaintiff's hands behind his back multiple times causing him extreme pain. (Dkt. #8 at 3). He also asserts that Dunbar escorted him from the housing area to the medical department and then from the medical department to a medium housing area, without making allowances for his injured hand.

Plaintiff specifically alleges Nurse Emerson "examined me and told me my hand was broken and would need an x-ray." (Dkt. #1 at 4). In his More Definite Statement, Plaintiff concedes that Nurse Emerson examined all of his injuries and told him that he would need an x-ray as she believed his hand was broken. Nurse Emerson gave him 1 packet of 800 milligram ibuprofen, 3 packets of non-aspirin pain reliever, and 3 large band aides for his right hand. (Dkt. #8 at 2). He complains that she did not give him any other bandages or a sling for his hand.

In response to his Step One grievance, Grievance No. 2021114091 (Dkt. #1-1 at 1–2), complaining about the injury to his hand and the lack of pain management, the response states:

> Review of your health record indicates you were seen by nursing on 5.14.21 due to injuries you suffered from an altercation with your cellmate. The nurse consulted

12

>with a provider who ordered x-rays of your hand. X-rays were completed on 5.18.21. On 5.21.21, a nursing chart review was completed on the x-ray results. A provider was consulted and an urgent referral to Ortho was completed. 5.25.21 you were seen at HG Ortho for your hand. Appropriate treatment was given.

(Dkt. 1-1 at 2). Plaintiff's grievance was attached to his Original Complaint, which the Court reviews as part of the Original Complaint. (*Id*. at 1–2).

Defendants Dunbar and Emerson move for dismissal of Plaintiff's claims for deliberate indifference to a serious medical need. Defendants contend a motion to dismiss for failure to state a claim can be granted if the complaint does not set out factual allegations showing the right to relief is plausible. Prisoners have the right to be free from deliberate indifference to their serious medical needs but claims of unsuccessful medical care or disagreement between a prisoner and a physician do not rise to the level of deliberate indifference. Defendants contend Plaintiff has not alleged any facts showing deliberate indifference. Instead, Plaintiff pleaded only conclusory allegations which fail to show a plausible right to relief. Defendants also invoke the defense of qualified immunity.

It is well-settled that to prevail on an Eighth Amendment claim for the deprivation of medical care, a prisoner must be able to show that appropriate care has been denied and that the denial has constituted "deliberate indifference to serious medical needs." *Thomas v. Carter*, 593 F. App'x 338, 342 (5th Cir. 2014) (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)). Whether Plaintiff has received the treatment or accommodation that he believes he should have received is not the issue. A prisoner's mere disagreement with his medical treatment, absent exceptional circumstances, does not support a claim of deliberate medical indifference. *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). Nor do negligence, neglect, medical malpractice, misdiagnosis or unsuccessful medical treatment give rise to a § 1983 cause of action. *See Zaunbrecher v.*

*Gaudin*, 641 F. App'x 340 (5th Cir. 2016). Rather, "subjective recklessness as used in the criminal law" is the appropriate definition of "deliberate indifference" under the Eighth Amendment. *Farmer*, 511 U.S. at 839-30. A prison official acts with deliberate indifference only if the official (1) "knows that inmates face a substantial risk of serious bodily harm," and (2) "disregards that risk by failing to take reasonable measures to abate it." *Gobert v. Caldwell*, 463 F.3d at 346 (quoting *Farmer*, 511 U.S. at 847).

The deliberate indifference standard sets a very high bar. Plaintiff must be able to establish that Defendants "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001), quoting *Estelle v. Gamble*, *supra*. Further, a mere delay in providing medical treatment does not amount to a constitutional violation without both deliberate indifference and a resulting substantial harm. *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006), citing *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). At the present stage of the proceedings, the Court examines the pleadings and does not determine whether a plaintiff has sufficient evidence to prove a claim.

As far as Plaintiff is asserting that Defendant Dunbar should not have handcuffed Plaintiff, the Fifth Circuit has held that the use of handcuffs or other restraining devices constitute a rational security measure and cannot be considered cruel and unusual punishment unless great discomfort is occasioned deliberately as punishment or mindlessly, with indifference to the prisoner's humanity. *Jackson v. Cain*, 864 F.2d 1235, 1243–44 (5th Cir. 1989) (citing *Fulford v. King*, 692 F.2d 11, 14–15 (5th Cir. 1982)); *cf. Hope v. Pelzer*, 536 U.S. 730 (2002) (handcuffing inmates to the fence and cells for longs periods of time and forcing inmates to stand, sit, or lie on crates,

stumps or otherwise for prolonged periods violated the Eighth Amendment). The Fifth Circuit noted "The use of shackles and handcuffs are restraints commonly used on inmates, even those of a preferred status." *Jackson,* 864 F.2d at 1244.

Plaintiff does not allege that Defendant Dunbar knew that Plaintiff's right hand was broken when the sergeant placed handcuffs on Plaintiff to escort him to the medical department. After Plaintiff's medical examination, Plaintiff still does not allege that the sergeant was aware that Plaintiff's hand was broken or that Plaintiff should not have been handcuffed. Plaintiff does not assert that he was given a handcuff pass—which would exempt him from being handcuffed. Plaintiff fails to assert facts that Defendant Dunbar knew that Plaintiff faced a substantial risk of serious bodily harm and disregarded that risk by failing to take reasonable measures to abate it. *Gobert*, 463 F.3d at 346. He has failed to state a claim against Sgt. Dunbar.

Regarding Defendant Emerson, Plaintiff concedes that the nurse examined his injuries and provided him with pain medication and band aids. The response to the Step 1 Grievance reflects that Nurse Emerson spoke to a higher-level medical provider about Plaintiff's injuries, and that an x-ray was ordered. Plaintiff's belief that Nurse Emerson should have done more is not actionable. Mere disagreement with the treatment provided or whether additional treatment should be given does not state a constitutional violation. *Stewart v. Murphy*, 174 F.3d 530, 537 (5th Cir. 1999).

To the extent that Plaintiff is attempting to hold Nurse Emerson responsible for the time lapse between when his hand was broken and his transfer to Hospital Galveston 22-days later, he fails to allege any facts that Nurse Emerson took any steps to prevent or delay his x-ray, diagnosis, or referral to Hospital Galveston. Plaintiff does not allege that he saw or spoke to Nurse Emerson after the initial examination. Plaintiff has failed to allege facts that Nurse Emerson violated

Plaintiff's constitutional rights. Moreover, "delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference that results in substantial harm." *Rogers v. Boatright*, 709 F.3d 403, 410 (5th Cir. 2013). Given that Nurse Emerson spoke to a provider about Plaintiff's injured hand to obtain an x-ray shows that she was not deliberately indifferent to Plaintiff's medical needs.

The Court does not reach the issue of qualified immunity regarding the claims for medical deliberate indifference as to Defendants Dunbar and Emerson as the Plaintiff failed to state a claim under Fed. R. Civ. P. 12(b)(6). Plaintiff fails to meet the hurdle of the first prong as stated in *Wernecke v. Garcia*—"whether 'the challenged conduct, viewed in the light most favorable to the plaintiff, would actually amount to a violation of [constitutional or] federal law.'" 591 F.3d at 392.

Recommendation

It is recommended that Defendants' Motion to Dismiss (Dkt. #11) pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) be granted in part and denied in part. Plaintiff's claims against the Defendants for money damages in their official capacities should be dismissed without prejudice. Plaintiff's individual capacity claims against Defendants Dunbar and Emerson should be dismissed with prejudice for failure to state claim upon which relief can be granted. It is recommended that Plaintiff's claims against Defendant Matthews should continue on the docket at this time.

Within fourteen (14) days after receipt of the Magistrate Judge's Report, any party may serve, and file written objections to the findings and recommendations contained in the Report.

A party's failure to file written objections to the findings, conclusions, and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions, and

recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

So ORDERED and SIGNED this 27th day of February, 2024.

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE